## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FERNANDE R. EDWARDS, on behalf of
herself and others similarly situated,**

                    **Plaintiff,**

-vs-                                  **Case No.  6:09-cv-234-Orl-28GJK**

**CFI SALES & MARKETING, INC.,
CENTRAL FLORIDA INVESTMENTS, INC.,
and WESTGATE RESORTS, INC.,**

                    **Defendants.**

_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

      This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS  (Doc. No. 294)** |
| **FILED:** | **December 19, 2011** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part.**

## I.    BACKGROUND.

      On February 9, 2009, Fernande R. Edwards (the "Plaintiff") filed a collective action complaint for unpaid overtime wages pursuant to the Fair Labor Standards Act (the "FLSA"). Doc. No. 1.  In total, 152 individuals joined Plaintiff as opt-in plaintiffs (collectively, the

"Plaintiffs").   Doc. Nos. 8, 20, 44, 84, 85, 101, 111, 113, 116, 118-19, 121, 124-25, 127.   Of the

152 Plaintiffs, 74 either voluntarily withdrew their consent to join in this action (30) or were

involuntarily dismissed for failing to prosecute or abide by the Court's scheduling order (44).[1]

On November 22, 2011, nearly three years after the case was filed, the Court entered an order

approving Plaintiffs and Defendants' joint motion for approval of their Fair Labor Standards Act

("FLSA") collective action settlement agreement (the "Agreement").  Doc. No. 291.[2]

      The Agreement resolved the claims of seventy-eight (78) Plaintiffs.  Doc. No. 291 at 1-2.

Defendants agreed to pay a total of approximately $31,249.50 to resolve the FLSA claims.  *See*

Doc. Nos. 286-1 at 7, 9-10; 297 at 2; Exhibit 1 attached hereto.   The Agreement does not

calculate settlement proceeds for fourteen (14) Plaintiffs who were later included in the

settlement, and included proceeds for one Plaintiff, Carlos Avila, who was later dismissed from

the action.  *See* Doc. No. 291 at 1-2.  Based on the total percentage recovery for each of the

Plaintiffs as calculated in the Agreement, the Court was able to calculate the settlement proceeds

paid to the other fourteen (14) Plaintiffs.    Attached as Exhibit 1 to this report and

recommendation is a table showing: each Plaintiff; the amount of damages claimed and the

docket entry for their respective answers to the Court's interrogatories; their settlement amounts;

the percent recovery for each Plaintiff; and the total amount of the settlement.  *See* Exhibit 1.[3]

---

[1] *See* Doc. Nos. 87-88, 97, 137, 147, 156, 240-41,245, 250-1,258, 264,271, 274, 277,280, and 285.

[2] This case is related to a factually similar collective action FLSA case, *Andriello, et. al. v. CFI Sales & Marketing, Inc., et. al.*, Case No. 6:09-cv-208-36GJK.  This report and recommendation is similar to that prepared by the undersigned in the related case (Doc. No. 340), except that this report recommends that the Court award certain printing and scanning costs.  On August 10, 2012, the Honorable Charlene Edwards Honeywell entered an order adopting the undersigned's report and recommendation (Doc. No. 340) except, after receiving additional documentation from Plaintiffs, Judge Honeywell determined that the costs requested for printing and scanning were necessary to litigate the case.  Doc. No. 348.

The Plaintiffs agreed to settle for approximately 1.8% of the amount of damages they requested in their answers to the Court's interrogatories. *See* Exhibit 1; Doc. No. 286-1 at 9-10.[4] Therefore, of the 51.3% of the Plaintiffs who were successful or can be said to have prevailed upon their claims, they recovered only 1.8% of the amount of damages they originally claimed. *See* Exhibit 1.

Although the Agreement was reached nearly three years after the case was filed, the case was in the early stage of litigation and was not ready for trial. The primary work done on this case prior to reaching the Agreement was: the filing of the complaint (Doc. No. 1); Defendants filing their answer, affirmative defenses and counterclaims (Doc. Nos. 24, 106, 161, 163); filing notices to opt-in and responding to the Court's interrogatories (*see generally* Doc. Nos. 8, 16, 20, 25, 44, 74, 84-85, 101, 111, 112-14, 116-19, 120-21, 123-27, 129, 132-36, 140-44, 146, 149, 155, 239, 244, 253, 257); Defendants filing verified summaries (*see generally* Doc. Nos. 49-72, 75-77, 93, 165-237, 242-43, 246); filing a motion to transfer venue of Defendants' counterclaim, Defendants' response, Defendants' withdrawal of counterclaim as to certain Plaintiffs, and Plaintiffs' answer to the counterclaim (Doc. Nos. 37, 45, 100, 164, 238); filing a motion and stipulation for certification as a collective action (Doc. Nos. 101, 107); dealing with voluntarily or involuntary dismissal of claims by certain opt-in plaintiffs (*see* supra n. 1); and negotiating the settlement. No motions to dismiss or for summary judgment were filed.

---

[3] The fourteen (14) Plaintiffs, whose settlement proceeds were calculated by the Court, are highlighted in Exhibit 1. Defendants state that the total amount of the settlement is $31,249.88, which is $0.38 more than the Court's calculation. *Compare* Doc. No. 297 at 2 *with* Exhibit 1.  Plaintiffs have not stated the total amount of the settlement.

[4] Opt-in Plaintiff, Jonathan Watson appears to have settled his claim for approximately 1.7% of the damages he claimed in his answers to the Court's interrogatories. *See* Doc. Nos. 123-3; 286-1 at 10.

On December 19, 2011, Plaintiffs filed a Motion for Award of Attorneys' Fees and Costs (the "Motion") requesting an award of $49,391.11, representing $39,219.00 in attorneys' fees and $10,172.11 in costs. Doc. No. 294 at 4. As set forth in the chart below, Plaintiffs provide a detailed affidavit and time sheet showing the individual who performed each task, the hourly rate for that individual, a description of each task, and the amount of time expended. Doc. Nos. 294-1 at 3; 294-2 at 1-46.

| Attorney / Paralegal | Hours Expended | Hourly Rate | Fees |
|---|---|---|---|
| L. Todd Budgen, Esq. | 37.0 | $275.00 | $10,175.00 |
| K.E. Pantas, Esq. | 13.8 | $300.00 | $4,140.00 |
| Michael Ferrin, Esq. | 57.0 | $175.00 | $9,975.00 |
| Jon Rankin | 16.6 | $105.00 | $1,743.00 |
| Becki Rodak | 138.8 | $95.00 | $13,186.00 |
| **TOTAL** | 263.20 | | **$39,219.00** |

Doc. Nos. 294-1 at 3; 294-2. Thus, Plaintiffs request a total of $39,219.00 in attorneys' fees. *Id.*

In Mr. Budgen's affidavit, he provides a chart describing the costs requested:

| | |
|---|---|
| Filing Fee | $350.00 |
| Service of Process | $75.00 |
| Copy/Reproduction Fees | $6,876.25 |
| Mailing Fees | $2,870.86 |
| **Total** | **$10,172.11** |

Doc. No. 294-1 at 3. Plaintiffs also attach a more detailed spreadsheet of costs, which shows the filing fee, cost of service of process, scanning costs of $3,539.25, printing costs of $3,337.0, and mailing costs of $2,870.86. Doc. No. 294-3 at 1. Scanning and printing costs are separated by event, number of scans, prints or copies, and the price per page. Doc. No. 294-3 at 1. Mailing

4

costs are separated by event, number of mailings, and postage. Doc. No. 294-3 at 1. Plaintiffs state that the "printing and copying costs requested were necessary to litigate this case." Doc. No. 294 at 3. Plaintiffs further state that Mr. Budgen "tediously reviewed his time records and eliminated all time and costs [sic] entries for those persons who opted into this case, but ultimately did not make a recovery." Doc. No. 294 at 2.

On January 13, 2012, Defendants filed a response (the "Response") to the Motion. Doc. No. 297.[5] In the Response, Defendants adopt by way of reference the undersigned's report and recommendation in *Andriello, et. al. v. CFI Sales & Marketing, Inc., et. al.*, Case No. 6:09-cv-208-Orl-36GJK (Doc. No. 340), which involved similar claims, the same Defendants, and the same attorneys. Doc. No. 297 at 4-6. On August 10, 2012, Defendants filed a notice of supplemental authority directing the Court's attention to the Honorable Charlene Edwards Honeywell's order adopting the undersigned's recommendation that the lodestar be reduced after-the-fact by seventy (70) percent. Doc. No. 305. *See also Andriello*, Case No. 6:09-cv-208-Orl-36GJK (Doc. Nos. 340, 348). Defendants maintain that the Court should apply the same legal analysis here. Thus, Defendants argue that based on the results obtained here, the Court should apply an after-the-fact reduction in the lodestar of seventy (70) percent. Doc. No. 297 at 4-6, 11-13 (citing *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1326 (M.D. Fla. 2001) (reducing lodestar by 67% due to limited recovery in unpaid overtime collective action); *Brandt v. Magnificent Quality Florals Corp*, 2011 WL 4625379 at *11-13 (S.D. Fla. Sept. 30, 2011) (reducing lodestar by 70% due to account for limited success); *Gary v. Health Care Services,*

---

[5] In the Response, Defendants state that the Plaintiffs who prevailed in this case recovered less than 4% of the damages they originally sought. Doc. No. 297 at 1. Defendants' calculation fails to account for the fact that each Plaintiff requested an equal amount of liquidated damages in their answers to the Court's interrogatories. *See* Exhibit 1 (citing to each answer to the Court's interrogatories). Thus, each Plaintiff recovered approximately 1.8% of the total amount of damages they originally sought.

*Inc.*, 744 F.Supp. 277, 278-79 (M.D. Ga. 1990) (FLSA case where 5.1% recovery warranted a 60% reduction in the lodestar)).[6]

Defendants have no objection to the hourly rates requested. Doc. No. 297 at 6. As to the number of hours requested Defendants object to some of the hours requested for the following reasons: 1) redundancy; 2) clerical tasks are not compensable; 3) unnecessary tasks are not compensable; and 4) work performed for Plaintiffs who were dismissed or opted out are not compensable. Doc. No. 297 at 6-9. Defendants attach a twenty (20) page list of time entries they object to and state the specific reason(s) therefor. Doc. No. 297-2 at 2-21. Defendants state that the fees sought for these objectionable hours total $5,459.50. Doc. No. 297 at 9. Thus, using the normal, line-by-line lodestar method, Defendants state that total amount of attorneys' fees should equal $33,759.50 ($39,219.00 - $5,459.50). Doc. No. 297 at 9. Accordingly, Defendants request a 70% after-the-fact reduction of lodestar <u>after</u> excluding from the lodestar the non-compensable hours requested (70% of $33,759.00 = $10,127.85). Doc. No. 297 at 13.

As for the $10,172.11 in costs requested, Defendants object to $9,753.11 of those costs. Doc. No. 297 at 14-5. Defendants argue that postage costs or costs associated with mailing ($2,870.86) are not compensable under 28 U.S.C. § 1920. Doc. No. 297 at 14. Defendants maintain that the $3,337.00 Plaintiffs seek for the costs of photocopying is not compensable because Plaintiffs failed to come forth with evidence supporting their statement in the Motion that those copes "were necessarily obtained for use in the case. Doc. No. 297 at 15. As for costs of scanning documents ($3,539.25), Defendants contend that those costs are not compensable

---

[6] Defendants also maintain that the lodestar should be reduced by seventy (70) percent because consent to join forms were mailed to 1,466 potential plaintiffs, but only 152 ultimately joined the action and only fifty-one (51) percent of those were ultimately successful. Doc. No. 297 at 2. Thus, Defendants argue that the Court should begin its analysis based on the number of opt-in notices (1,466) that were mailed out to potential plaintiffs and not just on the number of actual plaintiffs. *Id.*

under the FLSA. Doc. No. 297 at 14 (citing *Andriello*, Doc. No. 340 at 17). Defendants'

calculation of the total amount of costs they argue are not compensable ($9,753.11) contains an

error. The total amount of the costs Defendants claim are not compensable is $9,747.11

($2,870.86 + $3,337.00 + $3,539.25). Accordingly, Defendants request that the Court award

Plaintiffs $10,172.11 in attorneys' fees and $425.00 in costs. Doc. No. 297 at 15.

On March 1, 2012, Plaintiffs filed a reply (the "Reply") to the Response. Doc. No. 304.

Plaintiffs acknowledge that the "facts, arguments, parties, and theories" in this case are "directly

parallel" to *Andriello*. Doc. No. 304 at 2. Plaintiffs argue that the lodestar should not be reduced

based on the number of potential plaintiffs who did not opt-in, Plaintiffs who withdrew their opt-

in, or Plaintiffs who were dismissed from the case. Doc. No. 304 at 2-3. Plaintiffs state that they

"agree with a lodestar approach and the type of after-the-fact analysis as utilized in [*Andriello*]."

Doc. No. 304 at 3. Nevertheless, Plaintiffs maintain that to reduce the lodestar simply because

Plaintiffs originally thought they were entitled to more damages than they agreed to settle for

oversimplifies the underlying themes of the FLSA. Doc. No. 304 at 4.

Plaintiffs state that the cases relied upon by the Defendants in support of the Response

are not applicable to this case. Doc. No. 304 at 5. Plaintiffs argue that those cases dealt with

attorneys who "essentially ran up the bill by pursuing a claim that never came to fruition." Doc.

No. 304 at 5. Plaintiffs state that there is no issue in this case regarding the manner in which

Plaintiffs' counsel accrued fees. Doc. No. 304 at 5. Plaintiffs state that instead of accruing

additional and unreasonable fees, Plaintiffs' counsel recommended taking collectable damages

for his clients through the settlement and then pursuing attorneys' fees separately. Doc. No. 304

at 5. Plaintiffs state: "While counsel can certainly appreciate measuring client outcome in light

7

of the fees sought, counsel also argues such analysis must necessarily consider more than how much was initially sought as compared to what was realized while ignoring the surrounding circumstances." Doc. No. 304 at 10.

As to Defendants' twenty (20) page list of the hours they object to and the reasons therefor, Plaintiffs address only a few examples, stating that if "allowed" by the Court they will provide a "line-by-line explanation to respond to Defendant's [sic] . . . critique." Doc. No. 304 at 6. As for entries that Defendants object to for redundancy, Plaintiffs state that there is nothing wrong with paralegals reviewing documents filed in the case, and "[i]t is also likely that many 'redundant' entries are where different persons are reviewing for different items." Doc. No. 304 at 6. Regarding entries Defendants characterize as clerical, Plaintiffs generally state the work required skill and supervision from an attorney to perform and, therefore, they are compensable. Doc. No. 304 at 7. Plaintiffs generally maintain that the entries Defendants object to as unnecessary are tasks where time was spent ensuring that Plaintiffs were informed of the progress of the case and that they did not miss Court established deadlines. Doc. No. 304 at 7. As to objections for time spent performing work for individuals who were dismissed or opted out, Plaintiffs state that some entries contain simple typographical errors, but Plaintiffs acknowledge that others are for individuals who were dismissed or opted out and, therefore, are not compensable. Doc. No. 304 at 8.

In the Reply, Plaintiffs state that the printing and copying costs requested were necessary to litigate this case. Doc. No. 304 at 8. Plaintiffs state that they do "not seek to recover general copy costs, costs for multiple copies or copies of attorney correspondence." Doc. No. 304 at 9. Plaintiffs contend that the scanning and printing costs requested "are associated with documents

8

provided to potential members of the class and discovery." Doc. No. 304 at 9. Plaintiffs attach a detailed spreadsheet showing the individual Plaintiffs, the type and number of documents scanned, printed, or copied for each Plaintiff, and a list of costs withdrawn for Plaintiffs who were dismissed or opted out of the case. Doc. No. 304-1. At the end of the spreadsheet, Plaintiffs provide a calculation of the total amount of costs requested - $10,161.11, which is $11.00 less that the total amount of costs requested in the Motion ($10,172.11). *Compare* Doc. No. 304-1 at 8 *with* Doc. No. 294 at 4. Plaintiffs also provide a description of each type of scanning or printing costs requested. Doc. No. 304-1 at 9-11. As for costs associated with mailings, Plaintiffs state that such costs are recoverable under the FLSA. Doc. No. 304 at 9 (generally citing *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313 (M.D. Fla. 2001)). Accordingly, despite acknowledging that at least some of the time entries are not compensable, Plaintiffs request that the Motion be "granted in its entirety." Doc. No. 304 at 10.

## II.   ANALYSIS.

In suits to recover unpaid minimum wages or unpaid overtime wages, the FLSA mandates that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). This provision has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases.").

In the Eleventh Circuit, reasonableness is generally determined using the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable. *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). In making such determinations, the Court is an expert on the issues of the prevailing market's reasonable hourly rates for similar work and hours expended. *Norman*, 836 F.2d at 1303; *Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994).

### A. Reasonable Hourly Rate.

In this case, Defendants agree that the hourly rates requested by Plaintiffs' counsel are reasonable. Doc. No. 297 at 6.

### B. Reasonable Hours.

When submitting the hours reasonably expended, the moving party must exercise "billing judgment." *Hensley*, 461 U.S. at 434. This requires the moving party to exclude hours that are "redundant, excessive, or otherwise unnecessary." *Id.* The court will excise redundant, excessive or unnecessary hours when a party fails to. *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). In proving reasonable hours, a movant "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so [the court] can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. A party opposing a fee application should also submit objections and proof that are "specific and reasonably precise"

concerning those hours that should be excluded. *Barnes*, 168 F.3d at 428.   A fee opponent's failure to explain with specificity the particular hours he views as unnecessary or duplicative is generally fatal. *Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387 (11th Cir. 1997).

      1.  Redundant Entries.

    As set forth above, Defendants maintain that 14.2 hour of work performed Plaintiffs' counsel and paralegals in 52 entries are redundant.   Doc. Nos. 297; Doc. No. 297-2.   In Defendants' attachment, they provide the specific entries, objection, and the reasons why each entry is redundant.   Doc. No. 297-2.   In the Reply, Plaintiffs only address one specific entry. Doc. No. 304 at 6.   As set forth above, Plaintiffs state that due to the "page limitation" of the reply, they focus only on a few examples and, "if allowed by the [C]ourt," Plaintiffs can provide a response to each entry.   Doc. No. 304 at 6.

    On January 17, 2012, Plaintiffs sought leave of Court to file a ten (10) page reply.   Doc. No. 298. *See also* Local Rule 3.01(c) (requiring parties to obtain leave of Court before filing a reply).   In their motion, Plaintiffs specifically requested leave to file a ten (10) page reply and did not state that they needed more than ten (10) pages to address the Defendants' objections.   Doc. No. 298.   On January 19, 2012, the Court granted Plaintiffs' motion.   Thus, the Court allowed Plaintiffs to file a reply with the specific number of pages Plaintiffs stated that they needed address the Response.   Moreover, the Court notes that Plaintiffs could have, like the Defendants did in their Response, attached an exhibit containing each entry objected to and the reasons why the entries are compensable.   Accordingly, Plaintiffs' assertion that they are unable to address each entry Defendants object to due the page limitations of the Reply should be rejected.

    In the Reply, Plaintiffs generally state:

> Plaintiffs' counsel argues that it is perfectly acceptable and should
> be encouraged that his lead paralegal also review the filings. It is
> also likely that many "redundant" entries are where different
> persons are reviewing for different items. The paralegal may be
> reviewing for timeliness, due dates, and if any responses are
> required, while the attorney is reviewing such documents for legal
> basis and as to the case's progress.

Doc. No. 304 at 6. The undersigned has reviewed each entry and notes that Defendants incorrectly state that they object to 51 entries for redundancy representing 14.2 hours. Doc. No. 297 at 7. The Defendants' attachment actually objects to 50 entries representing 14.1 hours for redundancy. The undersigned agrees with Plaintiffs that a paralegal may review the same filing as an attorney for different, but equally compensable reasons. Accordingly, it is recommended that the Court overrule Defendants' redundancy objections as to 14.1 hours of work.

2. Clerical.

Defendants maintain that the Court should exclude 23.4 hours of work, representing $2,223.00 in fees, performed by Becki Rodak, a paralegal, because they allege those entries are non-compensable clerical work. Doc. No. 297 at 7-8. Plaintiffs only address one specific entry, but generally maintain that the work performed by Ms. Rodak required skill and the supervision of an attorney and, therefore, the entries are compensable. Doc. No. 304 at 6-7.

Fees for work performed by paralegals are recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988). Work that is "purely clerical in nature, such as contacting court reporters, . . . mailing, filing, and delivering documents is not compensable." *Montgomery v. Florida First Financial Group, Inc.*, 2008 WL 3540374 at *13 (M.D. Fla. 2008). After reviewing each of the entries at issue, the undersigned finds that all of the entries are clerical in nature. Accordingly, it

12

is recommended that the Court find 23.4 hours of work for Ms. Rodak should be excluded as clerical in nature.

      3. Unreasonable.

      Defendants argue that 5.4 hours should be excluded as unreasonable time entries, such as time spent resending documents to Plaintiffs, following up with Plaintiffs, drafting letters related to other lawsuits, and time spent drafting and reviewing motions for extensions of time. Doc. No. 297 at 8 (citing *Shoultz v. Petroleum Technicians, Inc.*, 2009 WL 891913 at *2 (M.D. Fla. 2009) (fees related to filing motion for extension of time when counsel had difficulty communicating with client not compensable)). Plaintiffs generally maintain that time expended "ensuring that members of the class were informed, as encouraged by this Court, and time spent ensuring members did not miss deadlines are compensable." Doc. No. 304 at 7. Many of the entries at issue at issue here are also clerical in nature, and they were addressed in the prior section. *See* Doc. No. 297-2 at 6-8, 13, 18-19. With the exception of 1.40 hours expended by Becky Rodak for preparing a letter to Plaintiffs regarding a separate lawsuit (Doc. No. 297-2 at 13), it is recommended that the Court find that the remaining hours are compensable. Accordingly, it is recommended that 1.40 hours be excluded as not reasonable because it pertains to work performed regarding a separate case.

      4. Unsuccessful Opt-In Plaintiffs.

      Defendants correctly argue that time incurred for Opt-In Plaintiffs who withdrew from this action or were dismissed is not compensable. Doc. No. 297 at 9. In the Response,

Defendants state that 5 entries, representing 9.8 hours of work, are for time expended for unsuccessful Plaintiffs. Doc. Nos. 297 at 9; 297-2 at 2, 4, 12, 14. However, in their attachment (Doc. No. 297-2), Defendants actually object to eight entries, representing 10.0 hours of work. *Id*. Plaintiffs maintain some of the entries contain simple typographical errors and represent work done for Plaintiffs who were ultimately successful in this case. Doc. 304 at 7-8 (citing Doc. No. 297-2 at 2, 20). Plaintiffs acknowledge that the other time entries are for unsuccessful Plaintiffs and are not compensable. Doc. No. 304 at 8. The Court agrees with Plaintiffs that entries that contain typographical errors, but represent work that was completed for successful Plaintiffs in this case, are compensable. *See* Doc. No. 297-2 at 2, 12. Two of the entries at issue are also clerical in nature and were addressed in a prior section. *See* Doc. No. 297-2 at 12. Accordingly, as set forth in the table below, it is recommended that the Court find that 9.3 hours of work expended for unsuccessful Plaintiffs should be excluded. *See* Doc. No. 297-2 at 4, 14.

| Date | Individual | Entry | Hours | Rate | Total |
|------|-----------|-------|-------|------|-------|
| 6/15/2011 | Rodak | Begin reviewing and redacting time entries of Plaintiffs who have been dismissed. | 4.0 hours | $95.00 | $380.00 |
| 6/16/2011 | Rodak | Continue to review and redact Time entries of Plaintiffs who have been dismissed. | 5.0 hours | $95.00 | $475.00 |
| 4/2/2010 | Budgen | Review and approve Notice of Filing Answers to Court Interrogatories for Allen Parker | .10 hours | $275.00 | $27.50 |
| 4/2/2010 | Rodak | Prepare Notice of Filing Answers to Court Interrogatories for Allen Parker | .20 hours | $95.00 | $19.00 |
| Total | | | 9.3 hours | | $901.50 |

*Id.*[7]

### C. After-The-Fact Reduction of Lodestar.

In addition to reducing the specific number of hours claim which are redundant, clerical, unreasonable, or represent time expended for unsuccessful Plaintiffs, Defendants request that the lodestar be reduced by 70% due to the results obtained.  Doc. No. 297 at 12.  "When a district court finds the numbers of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an <u>across-the-board-cut</u>." *Bivins v. Wrap it Up*, Inc, 548 F.3d 1348, 1350 (11 t h Cir. 2008) (emphasis added).  Thus, a Court has the discretion to provide "<u>an across-the-board cut</u>" in the number of hours claimed if it concludes that the number of hours claimed is excessive.  *Galdames v. N&D Inv. Corp.*, 432 Fed.Appx. 801, 806 (11th Cir. June 23, 2011) (unpublished) (citing *Bivins*, 548 F.3d at 1350).

"<u>As an alternative or in addition</u> to adjusting the number of hours used to calculate the lodestar, the Court may apply an <u>after-the-fact reduction of the lodestar</u> where the Plaintiff achieved only partial or limited success, and this is true 'even where the Plaintiffs' claims are interrelated, non-frivolous and raised in good faith.'" *Brandt v. Magnificent Quality Florals Corp.*, 2011 WL 4625379 at *11-12 (S.D. Fla. Sept. 30, 2011) (quoting *Hensley*, 461 U.S. at 436) (emphasis added).  Thus, the Court may make a traditional line-by-line reduction in the hours claimed, an across-the-board cut in the hours claimed, or, alternatively, make an after-the-fact reduction in the lodestar.  If the Court makes an after-the-fact reduction in the lodestar based

---

[7] The undersigned notes that there are other entries which contain work performed for successful Plaintiffs as well as unsuccessful Plaintiffs.  For example, on August 9, 2010, Ms. Rodak performed .10 hours of work preparing a letter to opposing counsel regarding Jose Santiago, Shane Cumiskey, Deneed Douglas, Bette Robertson, Gaylon Swank, Lisa Welch, Ernesto Aviles and Alicia Richardson.  Doc. No. 294-2 at 20.  Ernesto Aviles, Shane Cumiskey, and Gaylon Swank were unsuccessful Plaintiffs.  Because, as set forth below, it is recommended that the Court utilize an after-the-fact reduction in the lodestar rather than a line-by-line reduction, the undersigned has not provided a chart of all entries that contain work performed for successful and unsuccessful Plaintiffs.

upon limited success, it is not required to engage in an hour-by-hour analysis so long as the Court provides a clear explanation for the reduction. *Loranger*, 10 F.3d at 783. In this case, rather than conducting a line-by-line analysis or making an across-the-board reduction in the number of hours claimed, it is recommended that the Court utilize an after-the-fact reduction in the lodestar.

While Plaintiffs have requested compensation for some time entries that are clerical, unreasonable, or represent work performed for unsuccessful Plaintiffs, there has been no showing that the hours generally claimed for any particular task or as a whole are excessive. Thus, an across-the-board cut in the total number of billable hours is not appropriate. Moreover, a line-by-line analysis fails to account for the limited success actually achieved for each Plaintiff and is problematic due to individual entries showing work performed for both successful and unsuccessful Plaintiffs.

Plaintiffs achieved a very limited success. As set forth above, of the 51.3% of Plaintiffs who prevailed in this case, they each achieved only a 1.8% recovery of damages claimed. In other FLSA cases, courts have significantly reduced the lodestar based upon the limited results obtained. *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1326 (M.D. Fla. 2001) (limited monetary recovery of only $21,000 in unpaid overtime wages for collective action class resulted in a 67% reduction in lodestar); *Brandt v. Magnificent Quality Florals Corp.*, 2011 WL 4625379 at * 12-3 (S.D. Fla. Sept. 30, 2011) (2.1% recovery justified a 70% reduction in the lodestar); *Gary v. Health Care Services, Inc.*, 744 F.Supp. 277, 278-79 (M.D. Ga. 1990) (5.1% recovery justified a 60% reduction in lodestar).

16

The United States Supreme Court has stated that the degree of success achieved is a "crucial factor that district courts should consider carefully in determining the amount of fees to be awarded." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Due to achieving only a 1.8% recovery of estimated damages for each of the Plaintiffs, it is recommended that the Court find that an after-the-fact reduction in the lodestar is appropriate in this case.[8]

"While the nature of the results obtained may result in an upward or downward adjustment of the lodestar, '[f]ee awards should not simply be proportionate to the results obtained,' especially in the context of FLSA cases, where it is not uncommon for fee awards to exceed the Plaintiff's recovery in order to ensure that individuals with relatively small claims can obtain representation necessary to enforce their rights." *Brandt*, 2011 WL 4625379 at *12. Thus, while some reduction in the lodestar is appropriate to account of the very limited results obtained, because of the nature of FLSA cases, the reduction should not be proportionate to Plaintiffs' recovery. *Id.* In other words, the lodestar should not be reduced by 98.2%, which would reflect the actual results obtained for Plaintiffs.

Considering the policies behind the FLSA as well as the totality of the circumstances in this case, including the inclusion of time entries for work done pursuing claims of unsuccessful opt-ins, the results obtained, as well as the time entries which could be excluded for the reasons addressed above, the undersigned recommends that the Court find that a seventy percent (70%) reduction in the lodestar is appropriate. *Accord Brandt*, 2011 WL 4625379 at * 12-3 (S.D. Fla. Sept. 30, 2011) (2.1% recovery justified a 70% reduction in the lodestar); *Gary*, 744 F.Supp. at 278-79 (5.1% recovery justified a 60% reduction in lodestar). Thus, as set forth in table below,

---

[8] Plaintiffs generally maintain that the cases (*see* supra p. 16-17) cited by Defendants and the Court in support of an after-the-fact reduction in the lodestar are not analogous to the present case. Doc. No. 304 at 5. The Court has considered Plaintiffs' argument, but respectfully disagrees.

with an after-the-fact reduction of seventy (70%) percent, the appropriate amount of attorneys'

fees is **$11,765.70**.

| Attorney / Paralegal | Hours Expended | Hourly Rate | Fees |
|---|---|---|---|
| L. Todd Budgen, Esq. | 37.0 | $275.00 | $10,175.00 |
| K.E. Pantas, Esq. | 13.8 | $300.00 | $4,140.00 |
| Michael Ferrin, Esq. | 57.0 | $175.00 | $9,975.00 |
| Jon Rankin | 16.6 | $105.00 | $1,743.00 |
| Becki Rodak | 138.8 | $95.00 | $13,186.00 |
| TOTAL | 263.20 | | $39,219.00 |
| **70% Reduction** | | | **$11,765.70** |

Accordingly, rather than applying a line-by-line analysis or an across-the-board reduction in the

number of hours claimed, it is recommended that the Court award Plaintiffs $11,765.70 in

attorneys' fees, which represents an after-the-fact reduction of 70% of the lodestar.

   **D. Costs.**

   Regarding costs, Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs
> the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts
> necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any
> materials where the copies are necessarily obtained for use in the
> case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of
> interpreters, and salaries, fees, expenses, and costs of special
> interpretation services under section 1828 of this title.

18

> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920 (emphasis added). The Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920. *See Crawford*, 482 U.S. at 440-44. The Court may not tax as costs any items not included in 28 U.S.C. § 1920. *Id.*; *see also Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460 (11th Cir.1996).

Plaintiffs acknowledge that costs, in order to be recoverable, must fall within the auspices of Section 1920. Doc. No. 304 at 8.   The undersigned finds that all of the costs requested by Plaintiffs in the Reply ($10,161.11) are recoverable under Section 1920 except for the costs related to mailing, such as postage expenses ($2,780.86).   Doc. No. 304-1 at 3-8. Costs associated with mailing, such as postage, are not recoverable under Section 1920.   *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (postage expenses not recoverable).[9] By providing a detailed spreadsheet showing the exact printing and scanning costs for each Plaintiff and the tasks for which they were performed, as well as stating that such expenses were necessary to litigate the case, Plaintiffs have demonstrated that those costs are recoverable under Section 1920. Thus, it is recommended that the Court exclude $2,780.86 from Plaintiffs' award of costs. Accordingly, it is recommended that the Court award the remaining costs in the amount of $7,290.25 ($10,161.11 - $2,870.86).

## III.   CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Court:

---

[9] Plaintiffs have argued that mailing costs are compensable under the FLSA. Doc. No. 294 at 4 (citing *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313 (M.D. Fla. 2001) (generally stating that postage costs are recoverable in FLSA cases).  Nevertheless, the Eleventh Circuit has held that postage costs are not recoverable under 28 U.S.C. § 1920.

1. **GRANT in part and DENY in part** the Motion (Doc. No. 294);

2. Award Plaintiffs $19,055.95 ($11,765.70 in attorneys' fees and $7,290.25 in costs); and

3. Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report **within seven (7) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 20, 2012.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record

20

EXHIBIT 1

| Plaintiff | Amount Claimed | Settlement Amount | % Recovery | |
|---|---|---|---|---|
| Perlaza, Diego | $64,568.00 (Doc. No. 25-3) | $1,205.97 | 1.8% | 1.867751827 |
| Santana, Roberto | $31,987.20 (Doc. No. 25-4) | $597.36 | 1.8% | 1.8675 |
| Edwards, Fernande | $5,136.00 (Doc. No. 16-2) | $95.93 | 1.8% | 1.86779595 |
| Israel, Adam | $35,804.16 (Doc. No. 16-4) | $668.64 | 1.8% | 1.8675 |
| Johnson, Willie | $14,895.36 (Doc. No. 16-5) | $278.21 | 1.8% | |
| Martinez, Adam | $33,415.20 (Doc. No. 16-8) | $624.11 | 1.8% | |
| Lovecraft, Patrese | $2,624.40 (Doc. No. 16-7) | $49.00 | 1.8% | 1.8675 |
| Orellana, Vicente | $16,707.60 (Doc. No. 16-12) | $312.06 | 1.8% | |
| Perry, Christine | $20,394.00 (Doc. No. 16-13) | $380.90 | 1.8% | 1.867706188 |
| Quinones, Raynelda | $6,852.00 (Doc. No. 16-14) | $127.98 | 1.8% | |
| Richardson, Alicia | $12,698.40 (Doc. No. 16-15) | $237.17 | 1.8% | |
| Robinson, Robert | $56,832.00 (Doc. No. 16-16) | $1,061.48 | 1.8% | |
| Roma, Tony | $45,465.60 (Doc. No. 16-17) | $849.18 | 1.8% | |
| Strack, Peter | $18,209.10 (Doc. No. 16-18) | $340.10 | 1.8% | 1.867747444 |
| Werber, David | $4,965.12 (Doc. No. 16-9) | $92.74 | 1.8% | 1.867829981 |
| Syrett, Wendy | $49,786.88 (Doc. No. 74-2) | $929.89 | 1.8% | |
| Fernandez, Yaritza | $11,918.40 (Doc. No. 112-1) | $222.57 | 1.8% | 1.8675 |
| Taylor, Kevin | $29,400.00 (Doc. No. 112-2) | $549.12 | 1.8% | |
| Williams, Charlene | $83,784.88 (Doc. No. 112-3) | $1,565.07 | 1.8% | |
| Usher, James | $22,140.00 (Doc. No. 114-1) | $413.52 | 1.8% | 1.867750677 |
| Afriat, Michael | $42,954.24 (Doc. No. 117-1) | $802.28 | 1.8% | 1.86775508 |
| Gonzalez, Antonio | $25,336.80 (Doc. No. 117-2) | $473.23 | 1.8% | 1.86775757 |
| Quintino, Alvaro | $938.40 (Doc. No. 117-3) | $17.52 | 1.8% | 1.8675 |
| Rodriguez, Milton | $51,038.40 (Doc. No. 117-4) | $953.27 | 1.8% | 1.867750556 |
| Travick, Jonah | $45,520.80 (Doc. No. 117-5) | $850.21 | 1.8% | 1.867739582 |
| Pacheco, Guillermo | $532.80 (Doc. No. 120-1) | $9.95 | 1.8% | 1.867492492 |
| Treasure, Sean | $17,362.80 (Doc. No. 120-2) | $324.29 | 1.8% | 1.867728707 |
| Littles, Tony | $4,368.00 (Doc. No. 123-2) | $81.57 | 1.8% | 1.8675 |
| Watson, Jonathan | $7,495.68 (Doc. No. 123-3) | $129.80 | 1.7 | 1.731664105 |
| Palmer, Tammy | $17,498.00 (Doc. No. 126-1) | $326.82 | 1.8% | 1.867756315 |
| Sellier, Gamma | $4,989.60 (Doc. No. 126-2) | $93.18 | 1.8% | 1.8675 |
| Singer, Elizabeth | $36,400.00 (Doc. No. 126-3) | $679.86 | 1.8% | 1.867747252 |
| Tyrell, James | $4,800.00 (Doc. No. 126-4) | $89.65 | 1.8% | 1.867708333 |
| Niemyski, William | $16,146.66 (Doc. No. 129-1) | $301.58 | 1.8% | 1.867754693 |
| Tracy, Matthew | $66,272.00 (Doc. No. 129-2) | $1,237.79 | 1.8% | 1.867742032 |
| Cordell, John | $29,448.48 (Doc. No. 129-3) | $550.02 | 1.8% | 1.867736467 |
| Ghidhaoui, Sami | $3,323.52 (Doc. No. 132-1) | $62.06 | 1.8% | 1.8675 |
| Urdaneta, Nerio | $62,000.00 (Doc. No. 132-2) | $1,158.00 | 1.8% | 1.867741935 |
| Santiago, Jose | $7,200.00 (Doc. No. 132-3) | $134.48 | 1.8% | 1.867777777 |
| Charon, Isabel | $26,233.20 (Doc. No. 132-4) | $489.97 | 1.8% | 1.867747739 |
| Johnson, Chet | $3,931.20 (Doc. No. 132-5) | $73.42 | 1.8% | 1.867623117 |
| Segarra, Mayra | $3,619.20 (Doc. No. 132-6) | $67.60 | 1.8% | 1.867816091 |
| Dupont-Mitchell, Ruth | $9,910.18 (Doc. No. 133-1) | $185.10 | 1.8% | 1.867776367 |
| Stubbolo, Dennis | $17,721.60 (Doc. No. 133-2) | $330.99 | 1.8% | 1.867720747 |
| Pereira, Jorge | $4,643.60 (Doc. No. 134-1) | $86.71 | 1.8% | 1.8675 |

EXHIBIT 1

| | | | |
|---|---|---|---|
| Beals, Robert | $31,169.60 (Doc. No. 134-2) | $582.17 | 1.8% 1.867749345 |
| Douglas, Jimmy | $11,609.64 (Doc. No. 134-3) | $216.84 | 1.8% 1.867758173 |
| Schmidt, Frederick | $10,386.00 (Doc. No. 134-4) | $193.98 | 1.8% 1.867706528 |
| Piparo-Haase, Dawn | $5,061.60  (Doc. No. 134-6) | $94.54 | 1.8% 1.867788841 |
| Jolly, David | $1,286.40  (Doc. No. 135-2) | $24.03 | 1.8% 1.868003731 |
| Salgado, Carlos | $46,475.00  (Doc. No. 135-3) | $868.03 | 1.8% 1.867735341 |
| Mendez, Andres | $222.30  (Doc. No. 136-1) | $4.15 | 1.8% 1.8675 |
| Griffin, Shirley | $2,511.60 (Doc. No. 140-1) | $46.91 | 1.8% 1.867733715 |
| Bracato, Denise | $34,965.60 (Doc. No. 140-2) | $653.07 | 1.8% 1.867750017 |
| Latchinsky, Marina | $65,000.00 (Doc. No. 140-3) | $1,214.03 | 1.8% 1.867738461 |
| Pearce, John | $3,153.60 (Doc. No. 140-4) | $58.90 | 1.8% 1.867706747 |
| Knabusch, Jaq | $31,320.80 (Doc. No. 141-1) | $584.99 | 1.8% 1.867736456 |
| Everest, Graciela | $6,150.00 (Doc. No. 141-2) | $114.87 | 1.8% 1.867804878 |
| Edery, Alice | $3,729.60 (Doc. No. 141-3) | $69.66 | 1.8% 1.8677606017 |
| Ramirez, Jorge | $3,065.6 (Doc. No. 141-4) | $57.25 | 1.8% 1.8675 |
| Ortega, Lisa | $22,755.20 (Doc. No. 141-5) | $424.95 | 1.8% 1.8675 |
| Douglas, Deneen | $19,634.40 (Doc. No. 142-1) | $366.72 | 1.8% 1.867742329 |
| Robertson, Bette | $44,086.50 (Doc. No. 142-2) | $823.42 | 1.8% 1.867737289 |
| Ayars, Daniel | $1,200.00 (Doc. No. 142-5) | $22.41 | 1.8% 1.8675 |
| Pooley, Denise | $35,374.00 (Doc. No. 142-6) | $660.70 | 1.8% 1.867755978 |
| Jaramillo, Alvaro | $4,251.00 (Doc. No. 143-2) | $79.40 | 1.8% 1.867795812 |
| Jove, Marian | $28,749.84 (Doc. No. 143-3) | $536.97 | 1.8% 1.867732133 |
| Guevara, Aurelio | $2,279.60 (Doc. No. 143-5) | $42.58 | 1.8% 1.867871556 |
| Alicia, Luis | $9,200.00 (Doc. No. 143-7) | $171.81 | 1.8% 1.8675 |
| Yagerman, Howard | $399.60 (Doc. No. 144-2) | $7.44 | 1.8% 1.861861861 |
| Maurovich, Veronica | $2,240 (Doc. No. 146-1) | $41.84 | 1.8% 1.867857142 |
| Charlton, Jannett | $1,319.22 (Doc. No. 149-1) | $24.64 | 1.8% 1.867770349 |
| Valentine, Kathy | $1,920 (Doc. No. 155-1) | $35.85 | 1.8% 1.8675 |
| Bagunes, Veronica | $25,323.20 (Doc. No. 239-1) | $472.97 | 1.8% 1.867733935 |
| Cardile, Johanna | $12,450.50 (Doc. No. 239-2) | $232.54 | 1.8% 1.867716155 |
| Santos, Georgeann | $111,955.20 (Doc. No. 244-1) | $2,091.04 | 1.8% 1.867747098 |
| Welch, Lisa | $3,966.72 (Doc. No. 253-1) | $74.09 | 1.8% 1.867790012 |
| Rubindecelis, Ximena | $13,190.40 (Doc. No. 257-1) | $246.36 | 1.8% 1.867721979 |
| **Total** | | $31,249.50 | |